RICKY DAVID SECHREST, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 21827

February 20, 1992                    826 P.2d 564

*Robert Bruce Lindsay,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Dorothy Nash Holmes,* District Attorney; and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Ricky David Sechrest was convicted of the brutal 1983 slayings of two young girls and sentenced to death. We affirmed Sechrest's judgment of conviction and sentences in Sechrest v. State, 101 Nev. 360, 705 P.2d 626 (1985). Sechrest now seeks to overturn his death sentences through post-conviction relief by asserting that he received ineffective assistance of counsel at the penalty phase of his trial. The district court determined that Sechrest's counsel had indeed performed deficiently, but denied relief because Sechrest had failed to show any prejudice resulting from his counsel's performance. After careful consideration, we affirm the decision of the district court.

### Background

The primary witness for the State at the penalty phase of Sechrest's trial was Lynn M. Gerow, a psychiatrist. Gerow had originally been appointed as an expert by the court at the request of defense counsel. Gerow had examined Sechrest and submitted a report of his findings to defense counsel. The defense decided

not to call Gerow as a witness in the penalty phase, but acquiesced to the State's request to call Gerow. Among other things, Gerow's testimony indicated that Sechrest was an incurable sociopath, who had an extensive history of criminal activity and drug use.

In a hearing before the district court, Sechrest sought to establish that he was denied his sixth amendment right to effective counsel because of his attorney's failure to prevent Gerow from testifying for the State. The district court determined that defense counsel's performance was substandard in that he failed to interview Gerow before the penalty phase in order to evaluate the possibly damaging effect of Gerow's testimony (defense counsel did communicate with Gerow several times before the State indicated its desire to use Gerow as a witness). Despite its determination that defense counsel's representation was deficient, the district court denied relief because Sechrest had failed to demonstrate that he had been prejudiced by his attorney's performance. This appeal followed.

## Discussion

Sechrest contends that the district court erred by requiring him to show that he was prejudiced by his counsel's derelictions. Sechrest nevertheless concedes that sixth amendment ineffective assistance of counsel claims are generally governed by the standard announced in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by this court in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984). Under *Strickland* standards, a defendant raising a claim of ineffective assistance of counsel must establish that counsel's performance was deficient, *and* that the deficiency prejudiced the defense. 466 U.S. at 687. However, Sechrest contends that his claim warrants a fifth amendment analysis because defense counsel facilitated the violation of Sechrest's fifth amendment right against self-incrimination by permitting Gerow to testify about his psychiatric examination of Sechrest. A fifth amendment analysis would shift the burden to the State to prove beyond a reasonable doubt that any constitutional errors were harmless. Satterwhite v. Texas, 486 U.S. 249 (1988); Chapman v. California, 386 U.S. 18 (1967).

A state risks violating fifth amendment rights by seeking to enhance its prospects for a death verdict through the introduction of statements made by the defendant during the course of a court-ordered psychiatric examination. Estelle v. Smith, 451 U.S. 454 (1981). When such statements are wrongfully used, the state is

required to prove beyond a reasonable doubt that the error was harmless. *Satterwhite; Chapman.*

In the instant case, however, the defendant's statements were not improperly obtained or used. Dr. Gerow's psychiatric examination of Sechrest was ordered *at the request of the defense.* The State later sought and obtained permission to use Gerow's testimony during the penalty hearing. In contrast, *Satterwhite* and *Estelle* involved situations where defense counsel was not the moving force behind the psychiatric examination that was introduced over the objection of counsel. Additionally, the trial courts in *Satterwhite* and *Estelle* were required by Texas law to impose the death penalty if the jury answered certain questions affirmatively, including the question of whether the defendant posed a continuing threat to society. The psychiatric testimony in those cases addressed the latter question, and thus impacted a crucial issue. In contrast here, although Gerow opined that Sechrest would not change, Nevada has not designated future dangerousness as an aggravating circumstance upon which the death penalty may be considered. NRS 200.033.

Gerow's testimony did not implicate any of the aggravating circumstances which were found by the jury as a basis for the imposition of the death penalty. Sechrest's statements were properly communicated to Gerow, and introduced with the consent of defense counsel. Neither federal nor state law supports an assertion that Sechrest's fifth amendment rights were violated. Thus, the issue is one of ineffective assistance of counsel to which the *Strickland* test applies.

As noted above, the *Strickland* standard involves a two-pronged inquiry: was defense counsel's performance deficient, and, if so, was the defendant prejudiced as a result. We need not determine whether the district court was correct in finding counsel's performance deficient because Sechrest has clearly failed to show prejudice. *See Strickland,* 466 U.S. at 697; Bejarano v. State, 106 Nev. 840, 801 P.2d 1388 (1990).

"When a defendant challenges a death sentence . . . the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland* at 695. *See also* Howard v. State, 106 Nev. 713, 800 P.2d 175 (1990).

In the penalty phase, the jury found four aggravating circumstances for each murder. Specifically, the jury found that the murders were committed: (1) during the course of a kidnapping;[1] (2) during the commission or attempted commission of sexual assault; (3) for the purpose of avoiding or preventing a lawful arrest; and (4) in a manner involving torture, depravity of mind or the mutilation of the victim. No mitigating circumstances were found. Gerow's testimony regarding Sechrest's criminal history and dim prospects for change was unrelated to any of the above aggravating factors. Therefore, Sechrest can only show prejudice by establishing that Gerow's testimony negated mitigating circumstances that would have been sufficiently strong to overcome the aggravating circumstances.

The only mitigating factor argued by the defense which may have been affected by Gerow's testimony concerned the jurors' failure to find that Sechrest lacked a significant history of prior criminal activity. NRS 200.035(1). Dr. Gerow testified that Sechrest had admitted to an extensive history of criminal involvement. However, other witnesses also testified about Sechrest's prior involvement with the law. During closing argument, defense counsel recounted Sechrest's previous crimes,[2] but emphasized Sechrest's lack of previous involvement in crimes of violence. Thus, the jury heard testimony other than Gerow's from which to reject this mitigating factor. In any event, even if Gerow's testimony were viewed as having the potential to dissuade the jurors from finding this one mitigating factor, it is clear beyond a reasonable doubt that no error occurred that would have caused the jury to conclude that the four aggravating circumstances were outweighed by the arguably mitigating factor no matter how strongly it may have been established.

The evidence at trial exposed the heinous nature of Sechrest's brutal crimes. Nothing short of the most compelling mitigating circumstances would have offered the potential of a sentence other than death. None were shown to exist. Although Gerow's testimony was not flattering to Sechrest, it revealed little that the jurors would not have surmised from the brutality and lack of humanity associated with Sechrest's destruction of two innocent young lives. As the district court observed, Gerow's testimony was little more than cumulative. We agree, and are unable to conclude or remotely perceive that absent Gerow's testimony, there is a reasonable probability that the result would have been different.

---

[1]The jury had already found Sechrest guilty of two counts of first-degree kidnapping in connection with the murders.

[2]These included burglary, possession of stolen property, possession of controlled substances and curfew violation.

Accordingly, we conclude that Sechrest was not denied the effective assistance of counsel during the penalty stage of his trial, and affirm as being fully justified the district court's denial of post-conviction relief from Sechrest's sentences of death.